## APPEAL OF LOUIS TITUS.

Docket No. 2450.    Submitted July 3, 1925.    Decided September 30, 1925.

1. Taxpayer, an attorney, who kept his books and made his tax returns upon a cash receipts and disbursements basis, received in 1918 payment for services rendered in 1917. *Held*, that such receipts were income in 1918.

2. Where work performed for the benefit of a proposed reclamation district did not create a debt against such district when formed, *held*, that no deduction for a bad debt could be taken in a subsequent year on account of expenditures for such work.

3. Depreciation allowed by Commissioner approved.

*Louis Titus, Esq.*, pro se.
*Ward Loveless, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

Taxpayer appeals from the determination of a deficiency in income tax for 1918 and 1919 of $25,313.89.

### FINDINGS OF FACT.

1. The taxpayer is an attorney at law and a resident of San Francisco, Calif.

2. During the year 1917 taxpayer rendered professional services to certain clients, which services were billed to them during the latter part of December, 1917, as follows: General Petroleum Corporation, $100; Albina Engine & Machine Works, $10,000; A. O. Anderson Co., $1,000. The amount of the fee to be charged the Albina Engine & Machine Works and the A. O. Anderson Co. was determined upon between an officer of the two companies and the taxpayer during the year 1917 and prior to the date when the bills were rendered. Payment of these bills was received by the taxpayer in 1918, as follows: January 2, 1918, General Petroleum Corporation, $100; January 28, 1918, Albina Engine & Machine Works, $5,000; February 1, 1918, A. O. Anderson, $1,000; February 23, 1918, Albina Engine & Machine Works, $5,000. The check of the General Petroleum Corporation for $100 was mailed to the taxpayer by that company during 1917, but was not received by the taxpayer until 1918. The books of the taxpayer were kept upon the basis of cash receipts and disbursements.

3. During the year 1917 taxpayer established an office in the City of Washington, and equipped it with furniture purchased, as follows: During 1917, $1,877.75; during 1918, $617.75; during 1919, $102.05; during 1920, $135.10. In his returns taxpayer claimed depreciation of 20 per cent, as follows: For 1917, $375.55; for 1918, $499.10; for 1919, $519.51. The Commissioner reduced the depreciation to 10 per cent.

4. During the year 1918 taxpayer was the owner of a large tract of land near Tracy, Calif., which was being prepared for farming purposes. The taxpayer was engaged in leveling the land, building ditches for irrigation, building levees, and otherwise preparing the property. In connection with this work taxpayer had erected cheap ranch buildings consisting of boards stood upon end with a roof made of shakes. They had no ceiling or interior side walls. Approximately one-half of the buildings were erected in 1918 and the balance in 1916 and 1917. Taxpayer claimed depreciation for 1918 of 20 per cent, which the Commissioner reduced to 10 per cent.

5. During the year 1918 taxpayer purchased three cows at a cost of $210 for the purpose of supplying milk to the men engaged in the work upon the ranch. Taxpayer claimed depreciation for 1918 of 20 per cent, which was reduced by the Commissioner to 10 per cent.

6. During 1918 the taxpayer purchased bunk and cook-house equipment for the use of the farm laborers, at a cost of $1,319.03, upon which he claimed depreciation for 1918 of 20 per cent, which was reduced by the Commissioner to 10 per cent.

7. During the year 1918 taxpayer also purchased horses and mules at a cost of $2,200, upon which he claimed depreciation for 1918 of

20 per cent, which was reduced by the Commissioner to 10 per cent. Taxpayer also purchased in 1917, at a cost of $255, and in 1918, at a cost of $7,942.63, tractors, automobiles, plows, scrapers, and other farm machinery and tools, upon which he claimed depreciation for 1918 of 33⅓ per cent, which was reduced by the Commissioner to 20 per cent. These horses, mules, tractors, plows, and scrapers were used upon the work of leveling the land, building irrigation ditches, and deep soil plowing upon the unreclaimed land.

8. During the year 1918 taxpayer expended the sum of $434.04 for material and labor in repairing fences upon this tract of land, which item was disallowed by the Commissioner.

9. During the year 1913 the taxpayer and other owners of property in the vicinity undertook to organize a reclamation district under the laws of the State of California. The preliminary steps were taken in 1913, but the district was not legally organized until March, 1914. The landowners of the district were desirous of having the reclamation work started at the earliest possible moment, and the taxpayer made an arrangement with the persons proposed as trustees of the district to the effect that if the taxpayer would proceed with the work the reclamation district would repay him for his expenditures. The taxpayer thereupon proceeded with the work and expended the sum of $13,385.56 prior to the completion of the legal organization of the district. After the organization of the district the trustees were advised by their legal adviser that they had no authority to make such a contract with the taxpayer and that they could not legally repay him for any work or expenses which had been incurred prior to the legal incorporation of the district. The district reimbursed taxpayer for his expenditures subsequent to the date of organization of the district, but did not pay the item of $13,385.56. Approximately one-half of the total area of the reclamation district was owned by the taxpayer. Negotiations between the taxpayer and the trustees of the district for payment of this amount were pending during 1914 and 1915. During this period the taxpayer conducted an investigation into the legal liability of the district and later, about 1915, employed a firm of attorneys to advise him. Their advice was that there was no legal liability on the part of the district, and this advice was received by the taxpayer in 1915. Thereafter, and for a period of about two years, the taxpayer made unsuccessful efforts to collect portions of this amount from the other landowners in the district and in 1918 charged off the amount on his books as uncollectible.

10. During the year 1919 taxpayer sold 19,000 shares of stock of North American Oil Consolidated Co. at $1 per share. Four thousand shares of this stock were owned by the taxpayer prior to March 1, 1913. The remaining 15,000 shares had originally been

held by the taxpayer prior to March 1, 1913, but were sold by the taxpayer in 1914 to one McLafferty, who, after holding the stock for a short time, requested the taxpayer to exchange the stock for bonds of the company, which was done, par for par. The bonds so exchanged had cost the taxpayer par and were owned by him prior to March 1, 1913. The Commissioner determined the cost of this stock to the taxpayer to be 50 cents per share, and included a profit of $9,500 on the transaction as income to the taxpayer for 1919.

### DECISION.

The deficiency determined by the Commissioner is allowed in part and disallowed in part. Expense of repairing fences upon the property owned by the taxpayer in the sum of $354.97 should be allowed as a deduction from income for the year 1918. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

### OPINION.

PHILLIPS: Taxpayer, who is an attorney and keeps his accounts and renders his returns upon a cash receipts and disbursements basis, contends that certain payments, received in 1918 for services rendered and billed in 1917, are income for 1917. In one case a check in payment of the bill rendered was mailed late in 1917 but received by the taxpayer in 1918. In the two other transactions involved, the amount was agreed upon between taxpayer and an officer of the corporate debtors (who was also a large stockholder in each) in 1917, but no payment was made until 1918.

Taxpayer urges that the amounts were constructively received in 1917; that drafts could have been drawn and would have been honored. We find nothing to distinguish this appeal from the decision in the *Appeal of J. M. Edmunds*, 1 B. T. A. 998.

Taxpayer also alleges error on the part of the Commissioner in reducing depreciation on the furniture and fixtures in his Washington office from 20 per cent to 10 per cent. It appeared that, because of the difficulty in obtaining furniture in 1917, taxpayer equipped his office with second-hand desks, chairs, typewriters, and other office equipment. There is no claim by the taxpayer and no evidence to support any finding that this equipment did not have an average useful life of at least 10 years, but the taxpayer claims that because it was necessary to purchase the property in 1917 at an inflated cost, and because he disposed of it in 1920 at a considerable loss, the depreciation claimed by him was not excessive. The theory of depreciation is that the taxpayer should be allowed, during the useful life of property used in his business, to recover the cost of such

property.  *Appeal of The Brevoort Hotel Co.*, 1 B. T. A. 132.  In determining the annual depreciation to be allowed, consideration can not be given to the fluctuations in cost or value of the assets which may take place from year to year owing to market conditions.  The fact that second-hand furniture sold at a high figure in 1917 and at a low figure in 1920 can not, therefore, be taken into account in determining the rate of depreciation which should be allowed the taxpayer.  The Commissioner having fixed the rate of 10 per cent and the evidence showing an average life of at least 10 years, no error was committed.

Taxpayer also claimed depreciation upon buildings, cattle, bunk and cook-house equipment, horses, mules, and farm machinery during 1918, as more fully set out in the findings of fact.  In each instance the entire property, or the greater part of the property, was purchased during the year 1918, and it is depreciation for that year which is in question.  No satisfactory proof of the reasonable life of any of these items was introduced at the hearing, nor did the taxpayer fix definitely the date in 1918 when each of these items was acquired.  The depreciation being for a part of the year only, and neither the portion of the year during which they were used nor a reasonable rate of depreciation being established, the determination of the Commissioner must be approved.

So far as the money spent for the benefit of the proposed reclamation district is concerned, it is not contended that any legal debt was created, although at the time the money was expended taxpayer believed it created a debt.  In this respect the appeal falls squarely within the decision of this Board in *Appeal of Luke & Fleming, Inc.*, 1 B. T. A. 12.  If the deducation be claimed as a loss sustained rather than as a bad debt, it is clear that such loss, if any, accrued at the time the money was expended.

With reference to the determination by the Commissioner that there was a profit of $9,500 upon the sale of 19,000 shares of North American Oil Consolidated Co. stock, the taxpayer did not attempt to question the cost of 50 cents per share determined by the Commissioner, but relied upon proof of March 1, 1913, value.  In this connection taxpayer testified that on March 1, 1913, and for a number of years prior thereto, he was the president of the North American Oil Consolidated Co., the largest stockholder and bondholder, and familiar with all of its properties, and that the value of the stock on March 1, 1913, was in excess of $1 per share.  There was no evidence of any sales, and it appears that such value was based entirely upon the oil-land holdings of the company, and no competent testimony was introduced of their value, nor was there any testimony as to the value in 1914 of the bonds which were exchanged

for 15,000 shares of stock other than the opinion of the taxpayer that such bonds at that time had a value in excess of 75 per cent of their face. The evidence upon this phase of the appeal is most unsatisfactory, being mostly conclusions upon the part of the taxpayer, and is not such as to permit us to make any findings of fact with reference to values, for which reason the determination of the Commissioner must be approved.

ARUNDELL not participating.