*757 OPINION.
Phillips:
Taxpayer, who is an attorney and keeps his accounts and renders his returns upon a cash receipts and disbursements basis, contends that certain payments, received in 1918 for services rendered and billed in 1917, are income for 1917. In one case a check in payment of the bill rendered was mailed late in 1917 but received by the taxpayer in 1918. In the two other transactions involved, the amount was agreed upon between taxpayer and an officer of the corporate debtors (who was also a large stockholder in each) in 1917, but no payment was made until 1918.
Taxpayer urges that the amounts were constructively received in 1917; that drafts could have been drawn and would have been honored. We find nothing to distinguish this appeal from the decision in the Appeal of J. M. Edmunds, 1 B. T. A. 998.
Taxpayer also alleges error on the part of the Commissioner in reducing depreciation on the furniture and fixtures in his Washington office from 20 per cent to 10 per cent. It appeared that, because of the difficulty in obtaining furniture in 1917, taxpayer equipped his office with second-hand desks, chairs, typewriters, and other office equipment. There is no claim by the taxpayer and no evidence to support any finding that this equipment did not have an average useful life of at least 10 years, but the taxpayer claims that because it was necessary to purchase the property in 1917 at an inflated cost, and because he disposed of it in 1920¡ at "a considerable loss, the depreciation claimed by him was not excessive. The theory, of depreciation is that the taxpayer should be allowed, during the useful life of property used in his business, to recover' the cost of such *758 property. Appeal of The Brevoort Hotel Co., 1 B. T. A. 132. In determining the annual depreciation to be allowed, consideration can not be given to the fluctuations in cost or value of the «assets which may take place from year to year owing to market conditions. The fact that second-hand furniture sold at a high figúre in 1917 and at a low figure in 1920 can not, therefore, be taken into account in determining the rate of depreciation which should be allowed the taxpayer. The Commissioner having fixed the rate of 10 per cent and the evidence showing an average life of at least 10 years, no error was committed.
Taxpayer also claimed depreciation upon buildings, cattle, bunk and cook-house equipment, horses, mules, and farm machinery during 1918, as more fully set out in the findings of fact. In each instance the entire property, or the greater part of the property, was purchased.during the year 1918, and it is depreciation for that year which is in question. No satisfactory proof of the reasonable life of any of these items was introduced at the hearing, nor did the taxpayer fix definitely the date in 1918 when each of these items was acquired. The depreciation being for a part of the year only, and neither the portion of the year during which they were used nor a reasonable rate of depreciation being established, the determination of the Commissioner must be approved.
So far as the money spent for the benefit of the proposed reclamation district is concerned, it is not contended that any legal debt was created, although at the time the money was expended taxpayer believed it created a debt. In this respect the appeal falls squarely within the decision of this Board in Appeal of Luke & Fleming, Inc., 1 B. T. A. 12. If the deducation be claimed as a loss sustained rather than as a bad debt, it is clear that such loss, if any, accrued at the time the money was expended.
With reference to the determination by the Commissioner that there was a profit of $9,500 upon the sale of 19,000 shares of North American Oil Consolidated Co. stock, the taxpayer did not attempt to question the cost of 50 cents per share determined by the Commissioner, but relied upon proof of March 1, 1913, value. In this connection taxpayer testified that on March 1, 1913, and for a number of years prior thereto, he was the president of the North American Oil Consolidated Co., the largest stockholder and bondholder, and familiar with all of its properties, and that the value of the stock on March 1,1913, was in excess of $1 per share. There was no evidence of any sales, and it appears that such value was based entirely upon the oil-land holdings of the company, and no competent testimonj’' was introduced of their value, nor was there any testimony as to the value in 1914 of the bonds which were exchanged *759 for 15,000 shares of stock other than the opinion of the taxpayer that such bonds at that time had a value in excess of 75 per cent of their face. The evidence upon this phase of the appeal is most unsatisfactory, being mostly conclusions upon the part of the taxpayer, and is not such as to permit us to make any findings of fact with - eference to values, for which reason the determination of the Commissioner must be approved.
Artjndell not participating.